### HEINZE *v.* ARTHUR'S EXECUTORS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 146. Argued March 2, 1892. — Decided March 14, 1892.

Gloves made of cotton and silk, in which cotton was the material of chief value were imported in January, 1874, and charged by the collector with a duty of 60 per cent *ad valorem*, that rate of duty being chargeable only on "silk gloves," under the act of June 30, 1864, c. 171, 13 Stat. 210, and on "ready made clothing of silk, or of which silk shall be a component material of chief value," under § 3 of the act of March 3, 1865, c. 80, 13 Stat. 493. The importer protested and appealed and brought suit. His protest stated that the goods were only liable to a duty of 35 per cent less 10 per cent "being composed of cotton and silk, cotton chief part, the duty of 60 per cent being only legal where silk is the chief part." The goods were made on frames; *Held*,

(1) Under § 14 of the act of June 30, 1864, c. 171, 13 Stat. 214, 215, the protest set forth distinctly and specifically the grounds of the objection of the importer to the decision of the collector, and was sufficient;

(2) It was immaterial that the protest did not specify that the gloves were made on frames;

(3) The goods were dutiable only at 35 per cent less 10 per cent under
§ 22 of the act of March 2, 1861, 12 Stat. 191, and § 13 of the act
of July 14, 1862, 12 Stat. 555, 556, 559, and under § 2 of the act of
June 6, 1872, 17 Stat. 231.

THE case is stated in the opinion.

*Mr. Stephen G. Clarke* (with whom was *Mr. Edwin B. Smith* on the brief) for plaintiffs in error.

*Mr. Assistant Attorney General Parker* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Superior Court of the city of New York, July 15, 1874, by Otto Heinze and Francis Gross against Chester A. Arthur, collector of the port of New York, to recover $174.99, as duties paid under protest on gloves made of cotton and silk. The goods were entered at the custom-house of the port of New York, January 14, 1874, and the duties were paid the same day. The protest was filed February 6, 1874, and an appeal was duly taken to the Secretary of the Treasury, February 24, 1874, and decided April 30, 1874. The suit was duly removed by the defendant into the Circuit Court of the United States for the Southern District of New York, by writ of certiorari. The only question involved in the case is as to the sufficiency of the protest. The defendant having died, his executors were substituted as defendants in his stead, in January, 1887. The case was tried before the court and a jury, in June, 1888, and a verdict was rendered for the defendants under the direction of the court, followed by a judgment in their favor, for costs, to review which the plaintiffs have brought a writ of error.

The protest signed by the plaintiffs was as follows: "On an importation of the undersigned firm, per steamer City of Brussels from Liverpool, duty paid January 14, 1874, containing partly cotton gloves mixed with silk, the appraisers of this port have levied a duty of *60% ad valorem,* although the

article is only liable to a duty of 35% less 10%, being composed of cotton and silk, cotton chief part, the duty of 60% being only legal where silk is the chief part.  We have paid the excess in order to get possession of the goods, but shall hold you and the government responsible for the return of the same."

The bill of exceptions states that the plaintiffs' counsel, in opening the case, "announced to the court and jury that they claimed that the goods involved in the suit were dutiable at 35% either as 'gloves made on frames,' under section 22 of the act of March 3rd, 1861, and the 13th section of the act of July 14th, 1862, or as 'manufactures of cotton not otherwise provided for,' under section 6 of the act of June 30th, 1864."  It also states that the plaintiffs, to maintain the issues on their part, "introduced evidence tending to show that on January 13th, 1874, they had imported gloves made on framés, composed of cotton and a slight admixture of silk, from 10 to 25% in value, and that the collector, Chester A. Arthur, had assessed thereon a duty of 60% *ad valorem*, which plaintiffs had paid;" that all other requirements as to appeal and suit were complied with; that thereupon the plaintiffs rested, and the defendants' counsel moved the court to direct a verdict for them, on the ground that the protest was insufficient, in that it did not distinctly and specifically point out to the collector the ground of the plaintiffs' objection to his classification, and contained no allegation that the goods in question were made on frames, and that, while there were in force at the time the protest was served many provisions of law, (including those alluded to by the plaintiffs' counsel in his opening, as well as others,) providing for a duty of 35 per cent, which might be applicable to the plaintiffs' goods, there was nothing in the protest to show which one of them was relied on by the importers; that the court granted the motion and the plaintiffs excepted; and that the jury, under the direction of the court, found a verdict for the defendants.

The only statutory provisions in force at the time this importation of gloves, composed of cotton and silk, was made,

under which it could be claimed they were chargeable with a duty of 60 per cent *ad valorem*, were § 3 of the act of March 3, 1865, c. 80, (13 Stat. 493,) which imposed a duty of 60 per cent *ad valorem* on "ready-made clothing of silk, or of which silk shall be a component material of chief value," and § 8 of the act of June 30, 1864, c. 171, (13 Stat. 210,) which imposed a duty of 60 per cent *ad valorem* on "silk . . . gloves," the same section imposing a duty of 50 per cent *ad valorem* on "all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for."

By § 22 of the act of March 2, 1861, c. 68, (12 Stat. 191,) a duty of 30 per cent *ad valorem* was imposed upon "caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, and all similar articles made on frames, of whatever material composed, worn by men, women or children, and not otherwise provided for," and on "clothing, ready-made, and wearing apparel of every description, of whatever material composed, except wool, made up or manufactured wholly or in part by the tailor, seamstress or manufacturer."

By § 13 of the act of July 14, 1862, c. 163, (12 Stat. 555, 556,) an additional duty of 5 per cent *ad valorem* was imposed on "caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, and all similar articles made on frames, of whatever material composed, worn by men, women and children, and not otherwise provided for," and on "clothing, ready-made, and wearing apparel of every description, of whatever material composed, except wool, made up or manufactured wholly or in part by the tailor, seamstress or manufacturer;" and also (p. 557) upon "manufactures not otherwise provided for, composed of mixed materials, in part of cotton, silk, wool or worsted, hemp, jute or flax."

By § 6 of the act of June 30, 1864, c. 171, (13 Stat. 208, 209,) a duty of 35 per cent *ad valorem* was imposed "on cotton shirts and drawers, woven or made on frames, and on all cotton hosiery," and "on cotton braids, insertings, lace, trimming, or bobinet, and all other manufactures of cotton, not otherwise provided for."

By § 2 of the act of June 6, 1872, c. 315, (17 Stat. 231,) it was enacted that on and after August 1, 1872, in lieu of the duties imposed by law "on all manufactures of cotton of which cotton is the component part of chief value," there should be levied, collected and paid 90 per cent of the rates of duty then imposed by law upon said articles, it being stated to be the intent of the section "to reduce existing duties on said articles ten per centum of such duties."

It is contended for the defendants that the protest is insufficient because it makes no reference to the gloves as "made on frames;" that the trial related exclusively to a classification of the goods as "made on frames;" that the protest was not distinct or specific as to such goods; and that the paper called a protest did not protest against anything.

As the importation in question was made in January, 1874, and the Revised Statutes, according to § 5595 thereof, embraced only the statutes of the United States, general and permanent in their nature, in force on December 1, 1873, as revised and consolidated by the commissioners, the question of the sufficiency of the protest arises under the statutes which existed December 1, 1873.

By the act of February 26, 1845, c. 22, (5 Stat. 727,) the right to maintain an action at law against a collector to ascertain and try the legality and validity of a demand for a payment of duties, and their payment under protest, was restored; but it was provided that such action should not be maintained unless such protest should be in writing "and signed by the claimant, at or before the time of payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." It was also provided by § 14 of the act of June 30, 1864, c. 171, (13 Stat. 214, 215,) that the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on imported goods, should be final and conclusive against all persons interested therein, unless the owner, importer, consignee or agent of the goods should, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, give notice in writing to the collector, if dis-

satisfied with his decision, "setting forth therein, distinctly and specifically, the grounds of his objection thereto."

In the present case, the entry was liquidated January 30, 1874, and the protest was filed February 6, 1874. The sole question for consideration is, whether the protest in question set forth distinctly and specifically the grounds of the objection of the importers to the decision of the collector assessing the duty of 60 per cent *ad valorem* on the gloves.

We think the protest was sufficient. The collector having assessed the duty of 60 per cent, could have assessed it only under § 8 of the act of June 30, 1864, (13 Stat. 210,) which imposes that rate of duty on silk gloves, or under § 3 of the act of March 3, 1865, (13 Stat. 493,) which imposes that rate of duty " on ready-made clothing of silk, or of which silk shall be a component material of chief value." The protest specifically states that the goods are " partly cotton gloves, mixed with silk," and are " composed of cotton and silk, cotton chief part, the duty of 60 per cent being only legal where silk is the chief part." The words " chief part," used twice in the protest, clearly mean that in the goods, composed of cotton and silk, the cotton is the component material of chief value, or the " component part of chief value," and that the silk is not the " component material of chief value." In this respect, the protest called the attention of the collector " distinctly and specifically " to the grounds of objection of the importers to his decision, namely, that he had, contrary to law, assessed a duty of 60 per cent upon the gloves, in that he had treated them as goods of which silk was the " component material of chief value," when the contrary was the fact, and the cotton, and not the silk, was the " component material of chief value " or " component part of chief value."

The protest further claimed that the gloves were liable to a duty of only 35 per cent, less 10 per cent, and were, in fact, in any event, liable to only that duty, whether liable to 30 per cent under § 22 of the act of March 2, 1861, (12 Stat. 191,) with the 5 per cent added under § 13 of the act of July 14, 1862, (12 Stat. 555, 556, 557,) or at 35 per cent, under the act of June 30, 1864, (13 Stat. 208, 209,) with the reduction, as to

all those provisions, of 10 per cent, under the act of June 6, 1872, (17 Stat. 231).

It is entirely immaterial that the protest did not specify that the gloves were made on frames. It was sufficient to state that the gloves were composed of cotton and silk, and that the cotton was the component material or part of chief value, and the silk was not the component material of chief value. The importers were bound only to state, as they did, that the duty of 60 per cent was illegal, and why it was illegal.

In *Arthur* v. *Unkart*, 96 U. S. 118, it was held by this court that gloves like those in question, made on frames, and composed of cotton and silk, in which cotton was the component part of chief value, were not dutiable at 60 per cent, under § 8 of the act of June 30, 1864, (13 Stat. 210,) but were dutiable only under § 22 of the act of March 2, 1861, (12 Stat. 191,) and § 13 of the act of July 14, 1862, (12 Stat. 555, 556, 557,) and under § 2 of the act of June 6, 1872, (17 Stat. 231).

Under the ruling of this court in *Davies* v. *Arthur*, 96 U. S. 148, 151, the objection set forth in the protest in this case, to the decision of the collector, was so distinct and specific as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

This rule was affirmed in *Greely's Administrator* v. *Burgess*, 18 How. 413, 416; *Arthur* v. *Dodge*, 101 U. S. 34, 37; *Arthur* v. *Morgan*, 112 U. S. 495, 501, and cases there cited; and *Schell's Executors* v. *Fauché*, 138 U. S. 562, 567, 568, 569.

The judgment of the Circuit Court is

*Reversed, and the case is remanded to that court with an instruction to grant a new trial.*